UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS JEROME BYRD,

    Petitioner,

v.

CATHERINE S. BAUMAN,

    Respondent.

Case No. 15-cv-13528
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING AN EVIDENTIARY HEARING ON HABEAS PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

---

In 2010, Curtis Byrd was charged with helping his then-girlfriend rob someone at an ATM. Byrd maintains that when the pair approached the victim, Byrd changed his mind about robbing him. But, according to Byrd, his girlfriend took the gun from him and proceeded with the crime which ended in the victim's death. While she accepted a plea deal, a jury convicted Byrd of first-degree felony murder and he received the statutorily mandated life sentence without possibility of parole.

Byrd petitions this Court for a writ of habeas corpus. He contends that his sentence is a result of his trial counsel's misunderstanding of accomplice liability. In particular, Byrd says that his counsel advised him not to engage in plea negotiations because his girlfriend's testimony would establish that he abandoned the crime—even though she was going to tell the jury that Byrd gave her the gun. For the reasons set forth below, Byrd has demonstrated that this claim warrants further exploration. Accordingly, the Court will hold an evidentiary hearing regarding Byrd's claim that his trial counsel was ineffective in advising Byrd to forego plea negotiations.

# I.

## A.

To obtain money to buy drugs, Byrd and his girlfriend, Charletta Atkinson, developed a plan to rob someone at an ATM. Byrd supplied a handgun and drove the couple to a bank. (R. 8-11, PID 772–73.) But once in the ATM drive-through lane—behind the eventual victim's car—Byrd got cold feet. (R. 8-11, PID 773.) Byrd, then a fifty-one-year-old retired autoworker with no criminal history outside of a municipal ordinance violation (R. 17, PID 1837), allegedly told Atkinson "[t]his ain't me . . . I can't do this babe" and returned the gun to his waistband. (R. 8-12, PID 851; R. 8-11, PID 773–74, 783–85.) Byrd claims Atkinson then scuffled with him, took the gun, and said, "I'll do it." (R. 8-11, PID 732–33.)

Byrd's account squares, at least in part, with a witness at the scene. The witness first saw Atkinson leave Byrd's car and turn toward the victim's car, then watched Atkinson return to Byrd's car. (R. 8-11, PID 634–38.) The witness saw Atkinson argue and exchange jabs with Byrd, and then saw Atkinson again approach the victim's car armed with a handgun. (R. 8-11, PID 634–38.)

But Atkinson testified to a different version of events at Byrd's trial. She told the jury that Byrd *gave* her the gun, and then waited in the car while she robbed and accidentally shot the victim. Byrd alleges his lawyer knew—before trial—that Atkinson would testify this way. (R. 17-1, 1896–97.) Indeed, Atkinson provided a similar account to police after her arrest and at her sentencing prior to Byrd's trial. (R. 8-12, PID 808–09, 879–80; *see also* R. 17-1, PID 1904 (Atkinson indicating during her plea colloquy that she got the gun from Byrd).)

## B.

Relying on an accomplice theory, the state charged Byrd and Atkinson with first-degree murder, first-degree felony murder, assault with intent to commit armed robbery, and felony

firearm charges.[1] (R. 17, PID 1823.) Atkinson pled to a lesser charge in exchange for her testimony against Byrd. (R. 8-12, PID 807–08.) Upon learning of Atkinson's deal, and facing a felony murder charge carrying a mandatory sentence of life without parole, Byrd says he asked his lawyer whether they should pursue a plea deal. (R. 17-1, PID 1896.)

But, according to Byrd, his lawyer advised that he should not consider a plea because he would not be convicted at trial. (R. 17-1, PID 1896.) Byrd claims his lawyer

> explained that Ms. Atkinson would be testifying that when we [got] to the bank, I told her I didn't want to [go] through with the robbery and therefore I abandoned the crime and was not guilty. He also said even if the jury believed that I handed her the gun, I was still not guilty based on my statement that I did not want to go through with it.

(R. 17-1, PID 1896.) In other words, Byrd's trial counsel allegedly led him to believe that even if the jury credited Atkinson claim that he gave her the gun, Byrd would still not be guilty because he did not intend to follow through with the robbery. (R. 17-1, PID 1896–97.) Based on his lawyer's advice, therefore, Byrd claims he "chose to proceed to trial without looking into the possibility of obtaining a plea bargain." (R. 17-1, PID 1896.)

Byrd also contends his lawyer advised him against testifying at trial. (R. 17-1, PID 1897.) Byrd says his lawyer thought Atkinson's testimony about Byrd abandoning any criminal intent would make irrelevant how Atkinson ended up with Byrd's gun. (R. 17-1, PID 1897.) Thus, Byrd opted not to testify in his own defense. (R. 17-1, PID 1897.)

A Wayne County jury found Byrd guilty on three counts, including felony murder, and, in November 2010, Byrd received the statutorily mandated life sentence. (R. 8-15.)

---

[1] The trial court would eventually dismiss the first-degree murder count on defense counsel's motion for a directed verdict. (R. 17, PID 1823.)

Byrd appealed his convictions to the Michigan Court of Appeals. His new appellate counsel advanced four claims: 1) ineffective assistance of counsel based on trial counsel's failure to seek an accident-theory instruction, 2) insufficient evidence, 3) a due process violation stemming from the admission of hearsay statements, and 4) prosecutorial misconduct. (R. 17, PID 1824.) The Michigan Court of Appeals affirmed Byrd's convictions and the Michigan Supreme Court denied a petition for review. (R. 8-20; R. 8-21.)

Just under one year later, Byrd filed a motion for relief from judgment in the state trial court. (R. 8-16, PID 1116.) Importantly, this post-conviction motion included—for the first time—the ineffective-assistance-of-trial-counsel claims he raises here, i.e., that trial counsel advised against plea negotiations due to his misunderstanding of the law. (R. 8-16, PID 1118.) Byrd requested an evidentiary hearing on his claims (R. 8-16, PID 1118), but the state trial court denied Byrd's post-conviction motion without holding a hearing. (R. 1-6; R. 8-17.)

Unfortunately, it is difficult to discern the basis of the state trial court's denial of Byrd's post-conviction motion. In one paragraph, the court seems to have denied the motion on preclusion grounds, under Michigan Court Rule 6.508(D)(2)—believing that Byrd had already raised the ineffective-assistance claims on direct appeal. (R. 1-6, PID 37.) But in the next paragraph of the opinion, the court appears to deny the motion for the opposite reason: that pursuant to Michigan Court Rule 6.508(D)(3), Byrd had failed to raise his ineffective-assistance-of-trial-counsel claims on direct appeal and also failed to show cause and prejudice to excuse this procedural default. (R. 1-6, PID 37–38.) There is no further clarification as both the Michigan Court of Appeals and Michigan Supreme Court denied Byrd leave to appeal. (R. 17-1, PID 1894, 1895; R. 1-7, PID 39.)

Byrd filed his petition for writ of habeas corpus on October 7, 2015. (R. 1.) Respondent initially moved to dismiss because Byrd filed his habeas application one day late. (R. 7.) But the

4

Court granted Byrd's request for equitable tolling and thus denied the motion to dismiss. (*See* R. 16.) The petition is now fully briefed. (R. 19, 21.)

## II.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), habeas corpus relief may be granted on claims that were adjudicated "on the merits" in state court only if the state-court adjudication of the claim resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

But if none of the state courts addressed Byrd's claims on the merits, AEDPA deference would not apply and this Court would review Byrd's claims *de novo*. *See Cone v. Bell*, 556 U.S. 449, 472 (2009); *See also McKenzie v. Smith*, 326 F. 3d 721, 726 (6th Cir. 2003).

As will be discussed, the State concedes that no state court addressed the specific ineffective-assistance-of-trial-counsel claims that were raised on post-conviction review. Thus, if the claims are not procedurally barred, this Court reviews them *de novo*.

## III.

### A.

The Court first addresses Respondent's claim that Byrd procedurally defaulted the ineffective-assistance claims. In support of this argument, Respondent cites the state trial court order dismissing Byrd's post-conviction petition under Michigan Court Rule 6.508(D)(3). (R. 19, PID 2105.) Procedural default occurs where a habeas petitioner fails to exhaust all opportunities for state court review, and cannot show good cause and prejudice for so doing. *See Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). There is no dispute that on direct appeal, Byrd's appellate

counsel raised an ineffective-assistance-of-counsel claim. But it is equally clear that appellate counsel did not include Byrd's claim about his trial counsel's misunderstanding of the law. Thus, the issue is whether Byrd can show cause for failing to raise this specific claim and resulting prejudice.[2]

Byrd contends that the ineffective assistance of his appellate counsel excuses the failure to raise on direct appeal a claim based on his trial counsel's failure to understand accomplice liability. Byrd must show cause and prejudice to excuse his procedural default, and a meritorious ineffective assistance of appellate counsel claim may do so. *See Edwards*, 529 U.S. at 452; *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). This Court reviews *de novo* Byrd's argument that his appellate counsel was ineffective. *See Hall v. Vasbinder*, 563 F.3d 222, 236–37 (6th Cir. 2009) (holding that an ineffective-assistance claim raised as cause for a procedural default does not receive AEDPA deference).

Byrd says his appellate counsel provided ineffective assistance in failing to raise on direct appeal the two claims related to trial counsel's misinformed legal strategy. To support his claim, Byrd attached an affidavit from his appellate counsel (which was also attached to his state post-conviction motion) explaining why appellate counsel did not raise the two trial counsel claims on direct review. (R. 17-1, PID 1898); (R. 8-16, PID 1167.) The Court largely agrees with Byrd.

---

[2] There is another issue lurking. According to the State, "procedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." (R. 19, PID 2104–05 (citing *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003)).) It is difficult to read the state court's opinion as enforcing Michigan Court Rule 6.508(D)(3). After finding Byrd had already raised his ineffective-assistance-of-counsel claims on direct appeal, the court summarily concluded that Byrd's arguments failed to meet the cause and prejudice standard of 6.508(D)(3). So a fair reading of the state court opinion is that it denied post-conviction relief based on 6.508(D)(2) and not 6.508(D)(3). But Byrd does not raise this issue, so the Court will address the State's procedural default argument.

The Sixth Amendment affords criminal defendants a right to the effective assistance of counsel at trial and on direct appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Whiting v. Burt*, 395 F. 3d 602, 617 (6th Cir. 2005). *Strickland* has long established the two-part standard to determine whether a habeas petitioner has received ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687; *see also Whiting*, 395 F. 3d at 617. First, Byrd must prove that counsel's performance was constitutionally deficient, meaning that counsel made errors so serious that he or she was not "functioning as the 'counsel' guaranteed the criminal defendant by the Sixth Amendment." *Id*. at 687. Second, the petitioner must establish that counsel's "deficient performance prejudiced the defense[.]" *Id*.

To succeed on the performance prong, Byrd must identify acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The reviewing court must "indulge a strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 689–90. Byrd bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong, Byrd must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id*.

As an initial matter, Byrd properly raised ineffective assistance of appellate counsel in his state post-conviction motion. (R. 8-16, PID 1118.) And the trial court's denial of that motion coupled with the subsequent denial of review by the Michigan Supreme Court properly exhausted the claim in state court. *See Edwards*, 529 U.S. at 452.

7

Byrd's affidavit from appellate counsel establishes deficient performance under the *Strickland* standard. (R. 17-1, PID 1898–1900.) Byrd's appellate counsel admits he should have raised the ineffective-assistance-of-trial-counsel claims that Byrd now brings. (R. 17-1, PID 1900.) He further admits that these are strong claims, that he did not discuss them with Byrd, that he did not adequately investigate the factual basis for these claims, and that he did not omit them pursuant to any strategic or tactical maneuver. (R. 17-1, PID 1900.) He also admits that while he attempted to contact trial counsel, he could only reach his paralegal, and should have tried harder to reach trial counsel. (R. 17-1, 1900.)

That leaves prejudice. But Byrd's ability to show prejudice on his appellate counsel claim depends entirely on whether he can show that his trial counsel's deficient performance resulted in prejudice (for if trial counsel's error was not prejudicial, it would not have been prejudicial for appellate counsel to have not raised that error on appeal). The Court will thus move to Byrd's ineffective-assistance-of-trial-counsel claims to determine whether they have any merit and then come back to the issue of procedural default.

**B.**

Byrd says that his trial counsel erroneously advised him against engaging in plea negotiations. Because no state court ever adjudicated this claim on its merits, AEDPA's deferential framework does not apply. Byrd raised this ineffective-assistance claim in his motion for relief from judgment. (R. 17, PID 1824–25.) But the state trial court mistakenly believed Byrd was merely raising the same claims he had brought on direct appeal. In other words, the state court did not appreciate that the ineffective-assistance claims being raised post-conviction were different from the ineffective-assistance claims raised on direct appeal. The state court dismissed Byrd's post-conviction motion without adjudicating Byrd's ineffective-assistance claims on the merits.

Indeed, the state concedes that no state court ever adjudicated this claim on the merits. (R. 19, PID 2113.) Thus, as the state also concedes, this Court reviews Byrd's claim *de novo*. *See Torres v. Bauman*, 677 F. App'x. 300, 302 (6th Cir. 2017) (finding no reason to apply AEDPA deference where the state concedes *de novo* review).

The Court turns to the merits of Byrd's ineffective-assistance-of-trial-counsel claim, beginning with deficient performance. To reiterate, Byrd says that his trial counsel believed that if a jury were persuaded that Byrd had abandoned his criminal intent, it could not find him guilty under the state's aiding-and-abetting theory. (R. 17-1 PID 1896–97.) Byrd says that his lawyer stuck to this strategy despite knowing that Atkinson would testify that Byrd *handed* her the firearm used to shoot the robbery victim. (R. 17-1, PID 1896–97.) Trial counsel allegedly did so because he believed that Atkinson's testimony about Byrd's unwillingness to go through with the robbery rendered irrelevant the manner in which Atkinson got the gun. (R. 17-1 PID 1896–97.)

The record supports Byrd's claim. Byrd's trial counsel did not want the court to provide an accomplice instruction, arguing "I have not heard Ms. Atkinson say anything damaging to the defendant at all." (R. 8-13, PID 936–37.) Then, his closing argument revealed a misunderstanding of accomplice liability. (R. 8-13, 963–1025.) He told the jury, "[a]ll of the evidence supports the abandonment theory. . . Ms. Atkins [*sic*] got here on this witness stand and said that the defendant said he didn't want to have anything to do with it. That's it." (R. 8-13, PID 985–86.) Then he took the argument a step further: "if [Byrd] gave her the gun, and knew that she was going to commit the offense, he's not guilty." (R. 8-13, PID 1020.)

The problem with trial counsel's approach is that Michigan law on aiding and abetting is not as forgiving as Byrd's counsel believed it to be. Michigan's aiding-and-abetting statute holds accomplices and principals equally liable for a criminal offense. Mich. Comp. Laws § 767.39. The

9

aiding-and-abetting jury instruction provided at Byrd's trial allowed for a murder conviction if Byrd either "intended the commission of the crimes alleged *or* must have known that [Atkinson] intended their commission at the time of giving the assistance." (R. 5-13, PID 1063 (emphasis added).); *see also People v. Carines*, 597 N.W.2d. 130, 136 (Mich. 1999) (holding in relevant part that where the state charges first-degree felony murder under an aiding-and-abetting theory, the defendant must act with malice and know that the principal intends to commit the offense at the time the defendant renders aid). Numerous cases hold that participation in an armed robbery where the defendant knows the co-defendant to be armed with a loaded firearm supports the finding of knowledge necessary to obtain a conviction for felony-murder on an aiding-and-abetting theory. *See Carines*, 597 N.W.2d at 136–37; *People v. Hart*, 411 N.W. 2d 803, 805 (Mich. Ct. App. 1987); *Meade v. Lavigne*, 265 F. Supp. 2d 849, 858–59 (E.D. Mich. 2003); *Harris v. Stovall*, 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998).

In short, trial counsel misunderstood and misstated the Michigan law of accomplice liability. Trial counsel advanced a theory that Byrd's change of heart defeated the prosecution's aiding-and-abetting theory even if Byrd gave Atkinson the gun. While abandonment is an affirmative defense under Michigan law, *see Hill v. Hofbauer*, 195 F. Supp. 2d 871, 886 (E.D. Mich. 2001), on the facts of this case it is not the trump card defense counsel believed it to be.

Moreover, if trial counsel neglected or refused to pursue a plea based on his misunderstanding of settled Michigan law on accomplice liability, such performance would fall below an objectively reasonable standard. *See Dando v. Yukins*, 461 F.3d 791, 798–99 (6th Cir. 2006) (finding ineffective assistance of counsel on the basis of "flatly incorrect" legal advice); *Maples*, 340 F.3d at 439 (holding that erroneous legal advice amounts to deficient performance); *Blackburn v. Foltz*, 828 F.2d 1177, 1182 (6th Cir. 1987) (reasoning that counsel's

misunderstanding of the law fell outside the range of competent assistance); *Magana*, 263 F.3d at 551–52) (finding counsel ineffective in failing to properly explain the sentencing consequences in the context of plea negotiations).

As for prejudice, Byrd must show that "but for his counsel's advice, there is a reasonable probability that he would have pleaded guilty." *Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001) (citing *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988)). Byrd was facing a mandatory life sentence. He claims that he instructed trial counsel to seek a plea, and had he been afforded sound legal advice, he never would have opted for trial. (R. 17-1, PID 1896.) Byrd also claims he would have accepted a plea had one been offered. (R. 17, 1837.) And a plea to second-degree felony-murder spared Byrd a mandatory life sentence.

The state argues that Byrd cannot show prejudice because Byrd has not unearthed even the possibility of a plea deal. (R.35, PID 2122.) But Byrd's petition offers reason to believe there could have been a plea offer: the prosecutor offered Atkinson a plea to second-degree murder, even though she pulled the trigger and had a prior criminal record. Presumably, and to avoid a trial, the prosecutor may have extended at least that deal to Byrd, a retired General Motors employee with no criminal history who got cold feet at the crime scene. Moreover, the Sixth Circuit does not require Byrd to bring forth objective evidence of a plea deal. *See Magana*, 263 F.3d at 547 n.1 (citing *Turner*, 858 F.2d at 1207).

Thus, in exercising its *de novo* review of this ineffective-assistance-of-trial-counsel claim, the Court wishes to expand the record. *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). Section 2254(e)(2) does not prevent such a hearing: Byrd's lawyer requested an evidentiary hearing in state court, thereby diligently attempting to develop the factual record in state court. *See* 28 U.S.C. §2254(e)(2); *Williams v. Taylor*, 529 U.S. 420, 437 (2000) ("Diligence . . . depends upon whether

11

the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court."). And it would help to hear from the prosecutor and Byrd's trial counsel regarding any plea considerations, discussions or offers. Therefore, the Court finds that an evidentiary hearing on Byrd's claim that trial counsel's erroneous legal advice resulted in his foregoing plea negotiations is necessary to assess prejudice.

This brings the Court back to the issue of procedural default. The Court cannot decide whether appellate counsel's failure to raise an ineffective-assistance-of-trial-counsel claim on direct appeal prejudiced Byrd until it determines whether trial counsel's errors prejudiced Byrd. So after the evidentiary hearing, the Court will be in a better position to decide whether Byrd has a valid excuse for his procedural default. And to the extent that Respondent believes that this Court cannot expand the record to answer the procedural-default question, there is case law suggesting otherwise. *See Sanders v. White*, No. 03-455, 2015 U.S. Dist. LEXIS 91633 (E.D. Ky. July 15, 2015) (holding an evidentiary hearing to determine in part whether habeas petitioner can overcome a procedural default).

## C.

Byrd's habeas corpus petition advances three other federal claims that the Michigan Court of Appeals decided on the merits on direct appeal. The appellate court provided reasoned analysis rejecting Byrd's claims that (1) his trial counsel's failure to instruct the jury on accidental discharge violated his Sixth Amendment rights, (2) the state lacked sufficient evidence for a felony murder conviction in violation of due process, and (3) the prosecutor's closing arguments also denied Byrd due process of law. (R. 17-1, PID 1881–87.)

Because § 2254(d) applies, Byrd must show that the appellate court's decision "was based on an unreasonable determination of the facts" or "was contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d). He has failed to do so.

**1.**

The Michigan Court of Appeals found that the failure of trial counsel to request a jury instruction on accidental discharge neither fell below an objective standard of reasonableness nor prejudiced Byrd. It explained:

> [A] death that results from a force set in motion by the defendant that is likely to cause death or great bodily harm cannot be considered accidental. One of the natural risks when Atkinson pointed a loaded gun at Joiner and cocked the hammer was that Joiner might attempt to defend himself or struggle to control the gun, resulting in his death or great bodily harm. Because the mens rea required for second-degree murder was established, the defense of accident was not tenable . . . .

(R. 8-20, PID 1228). The Court agrees with the Michigan Court of Appeals.

**2.**

Byrd next asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence of malice to support his first-degree felony murder conviction. (R. 18 at PID 1999.)

To assess a sufficiency of evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, (1979)). "The *Jackson v. Virginia* standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id*. (quoting *Jackson*, 443 U.S. at 319). The standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces

a nearly insurmountable hurdle.'" *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). "Adding to this extremely high bar are the stringent and limiting standards of AEDPA," which allows a federal habeas court to disrupt "a state court's decision that correctly identified and applied the controlling Supreme Court precedent only if the application of that precedent was objectively unreasonable, meaning more than incorrect or erroneous." *Id.* (internal quotation marks and citations omitted).

The Michigan Court of Appeals reasonably found sufficient evidence supported the jury's conclusion that Byrd acted with malice. First, the evidence supported a finding that Byrd did not abandon the crime. Though Atkinson testified to Byrd's "cold feet," that testimony contradicted her earlier statement to police. On that basis, the Michigan Court of Appeals reasoned that a jury could doubt Atkinson credibility with respect to Byrd's reluctance. And even if the jury believed Byrd did not want to go through with the crime, Atkinson testified that Byrd gave her the gun. Thus, even if the jury credited Byrd's reluctance, sufficient evidence supported a finding that he nonetheless wanted Atkinson to carry out the robbery. In sum, the Michigan Court of Appeals reasoned that the evidence showed Byrd "intended to commit a robbery and obtained a loaded gun for that purpose." (R. 18, PID 2022.) He then "gave the gun to Atkinson, knowing that it was loaded and that she intended to use it to commit the planned robbery." (R. 18, PID 2022.) The appellate court found that evidence sufficient to support a finding of malice. Byrd fails to demonstrate that this ruling is an "unreasonable application of" *Jackson*.

### 3.

Byrd next contends that he was denied a fair trial due to prosecutorial misconduct. (R. 18, PID 2003.) Byrd believes that the prosecutor's closing argument included unnecessary commentary on his clothing, an impermissible directive to assess his character, an erroneous

14

assertion that accident is not a defense to felony murder, and other problematic comments. (R. 18, PID 2005–10.)

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

But by placing the prosecutor's comments in context, the Michigan Court of Appeals reasonably rejected all of Byrd's prosecutorial misconduct assertions. The appellate court concluded that the prosecutor's attack on character was more an indictment of Byrd's credibility—a conclusion supported by the record. (*See* R. 8-13, PID 1040–41.) The prosecutor's opinion on Byrd's clothing was isolated and not inherently prejudicial. And the prosecutor's mischaracterization of an accident defense did not affect Byrd's rights. Accidental discharge of the firearm was not a tenable defense. Even taken together, the prosecutor's alleged misconduct was not enough to influence the jury's decision. In other words, the Michigan Court of Appeals' rejection of the prosecutorial misconduct claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

**D.**

Finally, Byrd contends his trial counsel's misinformed legal advice led him to forego taking the stand in his own defense. (R. 17-1, PID 1897.)

Even assuming deficient performance, Byrd cannot establish prejudice. In an attempt to show prejudice, Byrd relies on *Luce v. United*, 469 U.S. 38 (1984), and a New York State Bar bulletin from the 1957. *Luce* stands for the inapposite proposition that in order to preserve a Federal Rule Evidence 609(a) objection to improper impeachment, a defendant must testify. *Luce*, 469 U.S. at 43. The New York state bar bulletin explains how a defendant's decision not to testify intersects with the presumption of innocence. *See* Edward Bennett Williams, *The Trial of a Criminal Case*, 29 NY. St. B. Bull. 36 (1957). Neither source demonstrates *Strickland* prejudice.

Moreover, even if Byrd had testified that he did not give the gun to Atkinson, the evidence still included that he planned the armed robbery, brought the firearm, drove the pair to and from the bank, knew his co-defendant planned to carry out an armed robbery, and did nothing to stop her. Given this other evidence of guilt, Byrd has not shown that with his testimony there exists a "reasonable probability" of a different result. *See Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (finding no prejudice where habeas petitioner cannot show his testimony would overcome the weight of other evidence).

### IV.

For all of these reasons, the Court GRANTS an evidentiary hearing with respect to Byrd's claim that his trial counsel was ineffective in pursuing or advising him about a plea. The Court dismisses the remainder of Byrd's claims.

SO ORDERED.

Dated: September 15, 2017

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

       The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 15, 2017.

                                              s/Keisha Jackson
                                              Case Manager